# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

### APPLICATION AND AFFIDAVIT
### SEARCH WARRANT

Case No. 11-M-527

1121 W. Florence Street, Apt. 2, Whitewater, Wisconsin, 53190, more particularly described as a 2-story red brick multi-unit apartment. Red trim with two brown doors on the north side of the building. Brown window shutters, dark asphalt shingles, "1121" on right side of door entry, black numbers in white background. "Robert Wachowiak 2" on mailbox located in foyer area of building. A separate storage unit in the basement marked 2

I, Brant A. Ungerer, being duly sworn depose and say: I am a Milwaukee Police Department Detective and I have reason to believe that on the premises known as:

> 1121 W. Florence Street, Apt. 2, Whitewater, Wisconsin, 53190, more particularly described as a 2-story red brick multi-unit apartment. Red trim with two brown doors on the north side of the building. Brown window shutters, dark asphalt shingles, "1121" on right side of door entry, black numbers in white background. "Robert Wachowiak 2" on mailbox located in foyer area of building. A separate storage unit in the basement marked 2,

in the Eastern District of Wisconsin, there can now be found evidence of violations of 18 U.S.C. § 2252A as set forth in Attachment A.

The facts to support a finding of Probable Cause are as follows: See the attached affidavit.
Continued on the attached sheet and made a part hereof. ✔Yes

_____
**Signature of Affiant**
Brant A. Ungerer

Sworn to before me, and subscribed in my presence

September **27th**, 2011 **at 5:10 PM**
Date and time issued

at Milwaukee, Wisconsin
City and State

_____
**Signature of Judicial Officer**

William E. Callahan Jr., U.S. Magistrate Judge
Name & Title of Judicial Officer

# ATTACHMENT A

## ITEMS TO BE SEARCHED FOR AND SEIZED

1.  Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

    A.  Any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography, or information pertaining to an interest in child pornography;

    B.  Books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    C.  Originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

    D.  Motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

2.  Information or correspondence pertaining to the possession, receipt or distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

    A.  Envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United

States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

B.  Books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

3.  Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; and

4.  Any and all records in any form or other items or materials that pertain to accounts with any Internet Service Provider, as well as any and all records relating to the ownership or use of computer equipment found in the residence, including but not limited to sales receipts, invoices, bills for Internet access, and handwritten notes.

## AFFIDAVIT OF DETECTIVE BRANT A. UNGERER IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Brant A. Ungerer, a Milwaukee Police Detective and Task Force Officer with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state as follows:

1. I have been employed with the Milwaukee Police Department as a sworn law enforcement officer since April of 1993. I have held the rank of Detective since October of 2002. I am currently assigned as a Task Force Officer with the FBI, Milwaukee Division Cyber Crimes Task Force (CCTF). I am charged with conducting investigations of violations of federal law including the receipt, possession, and distribution of child pornography. I have gained experience in the conduct of such investigations through prior investigations, formal training, and consultation with other members of the task force regarding these matters.

2. I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

3. This affidavit is submitted in support of an Application for a Search Warrant for the residence located at **1121 W Florence Street, Apt. 2, Whitewater, Wisconsin, 53190**, in the State and Eastern District of Wisconsin, for evidence of violations of Title 18, United States Code, § 2252A, entitled "Certain activities relating to material constituting or containing child pornography."

4. Based upon the information summarized in this affidavit, I have reason to believe that evidence of such violations may be present at the above-mentioned residence.

5. The information supplied in this affidavit is based upon my investigation and information provided by other law enforcement personnel whom I believe to be reliable. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not set forth every fact related to or otherwise the product of this investigation.

## Applicable Criminal Law

6.     Federal law prohibits the knowing possession, receipt and distribution of child pornography, *i.e.*, any visual depiction of a person under the age of eighteen years engaged in sexually explicit conduct. Title 18, U.S.C. § 2252A; *see also* 18 U.S.C. § 2252. Likewise, federal law prohibits knowingly accessing with intent to view child pornography. Title 18, U.S.C. § 2252A(a)(5)(B). I am aware that each of these crimes requires a nexus between the prohibited conduct and interstate or foreign commerce.

7.     Further, I am aware that Title 18, U.S.C. § 2256(2)(A) defines "sexually explicit conduct" as:

actual or simulated--

a.     sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

b.     bestiality;

c.      masturbation;

d.      sadistic or masochistic abuse; or

e.     lascivious exhibition of the genitals or pubic area of any person.

## Technical Terms Pertaining To Computers

8.     The "Internet" is a collection of computers that are connected to one another via high-speed data links and telephone lines for the purpose of sharing information and services. Connections between Internet computers may exist across state and international borders and information sent between computers connected to the Internet frequently crosses state and international borders, even if those computers are located in the same state. In order to access the Internet, an individual computer must subscribe to an access provider, which operates a host

2

computer system with direct access to the Internet.

## Use of Computers for Child Exploitation

9.      I know from my professional experience that the primary manner in which child pornography is accessed, distributed, received, possessed and accessed today is through the use of computers. Digital image files and movie files can readily be stored on a computer hard drive and easily transferred to another computer via the Internet.

10.      Each time an individual views an online digital image, that image, or remnants of that image, are automatically stored on the hard-drive of the computer used to view the image. Once an individual opens an image of child pornography on his computer or accesses such an image through the Internet, that image is saved in the computer's "cache." This allows investigators to review a history of the images opened/accessed by the user of the computer long after the image has been opened or accessed.

11.      Digital information can also be retained unintentionally; for instance, traces of the path of an electronic communication may be automatically stored in many places, including temporary files or ISP client software, among others. In addition to electronic communications, a computer user's Internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. A forensic examiner often can recover evidence suggesting whether a computer contains peer-to-peer software, when the computer was sharing files, and some of the files that were uploaded or downloaded. Such information is often maintained indefinitely until overwritten by other data. In fact, computer files or remnants of files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the Internet. Even when the files have been deleted, they can be recovered months or years later using readily

3

available forensic tools. In addition, a computer's operating system may also keep a record of deleted data in a swap or recovery file. Files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache." The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

12. Individuals who possess, receive, transfer, and distribute child pornography use communication devices known as modems or cable connections that allow any computer to connect to another computer by telephone line, cable, or wireless service. By connection to an Internet service provider, electronic contact can be made to millions of computers around the world. Internet service providers are sometimes commercial entities that allow subscribers to dial local numbers to connect to a network, which is then connected to their host systems. "Hotmail" for example, is an anonymous and free e-mail service based in California. These Internet service providers allow electronic mail service between subscribers; and usually between their own subscribers and those of other networks. Once one has subscribed to an Internet service provider, there is no additional cost to send or receive image files. Further, each image is a digital duplicate of the computer original, and is thus not "lost" when distributed to another via computer. This open and anonymous communication allows the user to locate others of similar inclination and still maintain anonymity. Once contact is established, it is then possible to send text messages and graphic images to others. These communications can be quick, relatively secure, and as anonymous as desired.

4

13.    The ability to store images in digital form makes the computer an ideal repository for child pornography. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown exponentially within the last several years. Hard drives with a capacity of one terabyte are not uncommon, and these drives can store thousands of images at very high resolution. Hard drives are capable of storing digital images almost indefinitely.

14.    Images can be electronically mailed to anyone with access to a computer and modem, and they can be downloaded onto computers, external hard drives or other storage media, such as flash drives, CDs, and DVDs, for ease of storage, duplication, and distribution. With the proliferation of commercial services providing Internet service, computer transfer and digital copying is the preferred method of distributing child pornography.

15.    The capacity of computers, along with the ease of access and relative anonymity afforded to computer users, places virtually no limit on the number of child pornography images that can be amassed by a person interested in child pornography. Such images are almost always stored in the privacy and security of the person's home or some other secure location where they are readily available.

### Results of the Present Investigation to Date

16.    On February 3, 2006, a criminal judgment was entered in *United States v. Robert. J. Wachowiak, Jr.,* 05-CR-22 (E.D. Wis.). As part of the judgment, the defendant, Robert J. Wachowiak, Jr., date of birth **/**/1980, was sentenced to 70 months imprisonment and three years of supervised release. Wachowiak was released from prison November 9, 2010 to a transitional facility located in Janesville, Wisconsin. On or about May 3, 2011, he moved to an apartment in Whitewater, Wisconsin. Since May 3, 2011, his supervising probation officer in the Eastern District

5

of Wisconsin has been USPO Ian Alexander.

17. USPO Alexander interviewed Wachowiak on Monday, September 26, 2011 at the federal courthouse building in Milwaukee. During this interview, Wachowiak disclosed that, sometime before going to prison, he had downloaded child pornography images from the Internet and copied the images onto disks. He further stated that he hid these disks at his aunt's residence in West Allis, Wisconsin. Upon his release to a half-way house in November 2010, Wachowiak returned to his aunt's residence and recovered the disks. He then used his Macintosh computer to view the child pornography images, both at the halfway house and later at his own apartment in Whitewater. He claimed to have destroyed the disks sometime in August 2011.

18. Wachowiak related that the Macintosh computer, as of September 26, 2011, was located in his Whitewater apartment and that he lives in that apartment by himself. He also stated that he had some form of Internet access at the Whitewater apartment.

19. Upon application by the USPO, Wachowiak was arrested following these admissions on September 26, 2011, taken before the Honorable William E. Callahan, United States Magistrate Judge, and ordered temporarily detained. On October 3, 2011, United States District Judge Lynn S. Adelman will conduct a supervised release revocation hearing in Case No. 05-CR-22.

20. Wachowiak's landlord was interviewed by FBI agents on September 27, 2011. The landlord confirmed that Wachowiak initially rented unit seven at 1121 West Florence Street in Whitewater, Wisconsin, but that about two months ago he moved to unit two on the lower level of the same building. The landlord stated that, as far as he is aware, Wachowiak lives by himself. The landlord also showed the FBI agents a separate storage unit in the basement of the apartment building, assigned to unit two and marked with a "2." In my experience, the items specified in

6

Attachment A are capable of being stored in such a storage facility, and especially given Wachowiak's admitted penchant for hiding child pornography on removable storage media (disks), there is probable cause to believe that evidence of criminal activity will be found in this part of the premises as well as in the apartment itself.

### Information about the Seizure of Computer and Electronic Evidence

21.     Based upon my professional experience, I know that searching and seizing information from computers often requires agents to seize most or all electronic storage devices (along with related peripheral equipment) to be imaged and searched later by a qualified computer specialist in a laboratory or other controlled environment. This is due to the following:

   a.     Technical Requirements: Images or backups of computer data need to be restored to a separate computer and verified to ensure that the files restore or copy properly. Additionally, evidence may be encrypted, password protected, or in a format that could result in additional evidence being overwritten and/or destroyed electronically should an attempt be made to examine the electronic evidence on site.

   b.     Volume and Nature of Electronic Evidence: A seemingly small media storage device can store the equivalent of thousands of pages of information or more. It may be impractical to attempt data analysis on site.

22.     Based upon my professional experience, I know that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct and important respects, as follows:

   a.     The objects themselves may be instrumentalities used to commit the crime; and

   b.     The objects may have been used to collect and store information about crimes (in the

7

form of electronic data).

23. Rule 41 of the Federal Rules of Criminal Procedure permits the United States of America to search and seize computer hardware, software, documentation, passwords, and data security devices that are (1) instrumentalities, fruits, or evidence of crime, or (2) storage devices for information about a crime.

24. Based upon my professional experience, a computer specialist assigned responsibility for effectively seizing a computer or computer system needs to make a forensic image copy of the hard drive of the computer. The forensic image copy will include all areas of the computer hard drive, including file storage, deleted files, and unused areas.

### Statement of Probable Cause in Support of Application

25. Based on the facts stated herein, I respectfully submit that there is probable cause to believe that evidence of violations of Section 2252A of Title 18 of the United States Code is located at the residence 1121 W Florence Street, Apt. 2, Whitewater, Wisconsin. "Attachment A" to this affidavit is a list of items that are subject to search and seizure at this location.

### Information about the Place to Be Searched

26. The residence at 1121 W Florence Street, Apt. 2, Whitewater, Wisconsin is more particularly described as follows:

> 1121 W. Florence Street, Apt. 2, Whitewater, Wisconsin, 53190, more particularly described as a 2-story red brick multi-unit apartment. Red trim with two brown doors on the north side of the building. Brown window shutters, dark asphalt shingles, "1121" on right side of door entry, black numbers in white background. "Robert Wachowiak 2" on mailbox located in foyer area of building. A separate storage unit in the basement marked 2.

8